IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>TIMOTHY BURROUGHS, JAY HOLSTINE, JOHN GRIFFIN, AND MICHAEL OSWALD WILLIAMS<br><br>Defendants. | §<br>§<br>§<br>§<br>§<br>§ Case No.: 4:21-cv-994<br>§<br>§<br>§<br>§<br>§<br>§<br>§ |

## COMPLAINT

Plaintiff Securities and Exchange Commission (the "Commission" or "Plaintiff") files this Complaint ("Complaint") against Defendants Timothy Burroughs ("Burroughs"), Jay Holstine ("Holstine"), John Griffin ("Griffin"), and Michael Oswald Williams ("Williams") (collectively, the "Defendants"), and alleges as follows:

## I.
## SUMMARY

1.  Between at least February 2016 and March 2017, Burroughs and Holstine raised approximately $3.2 million from investors through the fraudulent and unregistered offer and sale of interests in two oil and gas joint ventures: the Petrobridge South Louisiana Joint Venture ("SLJV" or "SLJV Offering") and the Petrobridge Starks #1 Joint Venture ("Starks JV" or "Starks JV Offering") (collectively, the "Petrobridge Offerings.").

2.  Operating through PetroBridge Energy, LLC ("Petrobridge"), Burroughs, with Holstine's participation, lured investors with promises of oversized investment returns, while concealing critical material information. For example, they failed to disclose that Burroughs had

an extensive disciplinary history spanning more than 17 years for violations of the securities laws in no less than six states, which included findings that Burroughs failed to disclose material information to investors.

3. Fearing that his involvement would make investors less likely to invest with Petrobridge, Burroughs, with participation from Holstine, concealed his involvement in Petrobridge and positioned Holstine—who had no previous experience in oil and gas offerings or operations—as the apparent front man for the offering and for the business. In truth, Burroughs was the driving force behind the Petrobridge and its offerings.

4. Holstine, acting at least negligently, approved and distributed the false and misleading offering materials and took actions that helped Burroughs conceal his involvement in Petrobridge and its offering—even though Holstine had learned about some of Burroughs's checkered regulatory history.

5. In addition, the Starks JV offering materials, on which Burroughs and Holstine collaborated, contained false promises of outsized investment returns between 37% and 59%, that failed to account for operating expenses that would reduce investment returns by a minimum of 12%. Burroughs and Holstine also misrepresented the size of the oil and gas well leases and acreage in the Starks JV, which was to be the source of the investment returns.

6. Griffin and Williams, the two primary Petrobridge salespeople, earned hundreds of thousands of dollars in sales commission by selling investments in the Petrobridge Offerings, primarily through nationwide cold calling campaigns. Neither one was registered as a broker.

7. By committing the acts alleged in this Complaint, the Defendants directly and indirectly engaged in, and unless restrained and enjoined by the Court will continue to engage in, acts, transactions, practices, and courses of business that violate various provisions of the federal

securities laws; specifically, (1) Burroughs violated Sections 5(a), 5(c), and 17(a) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. §§ 77e(a), 77e(c), and 77q(a)] and Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. §§ 240.10b-5]; (2) Holstine violated Sections 5(a), 5(c), 17(a)(2), and 17(a)(3) of the Securities Act; and (3) Griffin and Williams each violated Sections 5(a) and 5(c) of the Securities Act [15 U.S.C. §§ 77e(a) and 77e(c)] and Section 15(a) of the Exchange Act [15 U.S.C. § 78o(a)].

8. In the interest of protecting the public from any further fraudulent activity and harm, the Commission brings this action seeking against all Defendants: (a) permanent injunctive relief; (b) disgorgement of ill-gotten gains with prejudgment interest thereon; (c) civil penalties; and (d) all other equitable and ancillary relief to which the Court determines the Commission is entitled. The Commission also seeks a conduct-based injunction and officer-and-director bar against Burroughs.

## II.
## JURISDICTION AND VENUE

9. The Commission brings this action under Section 20(b) of the Securities Act [15 U.S.C. § 77t(b)] and Section 21(d) of the Exchange Act [15 U.S.C. § 78u(d)], seeking to permanently restrain and enjoin Defendants from engaging in the acts and practices alleged herein.

10. The Court has jurisdiction over this action under Sections 20(d) and 22(a) of the Securities Act [15 U.S.C. §§ 77t(d) and 77v(a)] and Sections 21(d), 21(e), and 27 of the Exchange Act [15 U.S.C. §§ 78u(d), 78u(e), and 78aa].

11. Venue is proper because the Sherman Division of the Eastern District of Texas is where Burroughs and Holstine reside and where a substantial part of the acts, omissions, transactions, practices, and courses of business giving rise to the claims occurred.

12. The Defendants, directly and indirectly, made use of the mails or of the means and

instrumentalities of interstate commerce in connection with the acts, omissions, transactions, practices, and courses of business described in this complaint.

## III.
## DEFENDANTS

13. Burroughs, age 62, resides in Plano, Texas. He was listed as manager of Petrobridge from July to November 2015, when he convinced Holstine to remove him from the relevant corporate filings. Burroughs has been a respondent in at least seven state-securities enforcement actions from 1997 to 2014 based on conduct related to his time as president of two oil and gas companies, one of which was publicly-traded. These state actions include, among other things, findings that Burroughs failed to disclose his prior disciplinary actions to investors, failed to disclose to investors material information regarding the risks of investing in the oil and gas industry, failed to register as a broker-dealer, and engaged in the unregistered offer and sale of securities.

14. Holstine, age 57, resides in Plano, Texas. He was a manager of Petrobridge from July 2015 to May 2017. Prior to Petrobridge, Holstine had no experience in oil and gas offerings or operations.

15. Griffin, age 48, resides in Dallas, Texas. Griffin held the title of Vice President for Petrobridge, but he primarily offered and sold the Petrobridge offerings to investors. In 2015, the South Carolina Securities Commissioner sanctioned Griffin for making material omissions in the sale of securities and for acting as an unregistered agent.

16. Williams, age 62, resides in Williamsburg, Virginia. In August 2016, Burroughs hired Williams (with Holstine's agreement) to be a sales manager for Petrobridge.

## IV.
## RELEVANT ENTITY

17. PetroBridge Energy LLC (previously defined as "Petrobridge") currently has no

operations, but it was a Texas limited liability company with its principal place of business in Dallas, Texas, from July 2015 until its registration with the Texas Secretary of State was revoked in January 2019. Petrobridge's parent entity is Marcelina Creek, LLC ("Marcelina"), which is co-owned by Burroughs and Holstine. Petrobridge served as the joint venture manager for the Petrobridge Offerings. According to public filings, Holstine, Burroughs, and Williams are all former managers of Petrobridge. Neither Petrobridge nor its securities are, or have been, registered with the Commission.

## V.
## STATEMENT OF FACTS

**A.     The Petrobridge Offerings**

18.     In July 2015, Burroughs, who previously served as president of three oil and gas companies, recruited Holstine to jointly form Petrobridge, which would serve as the managing joint venturer for the Petrobridge Offerings. Holstine had no previous experience in oil and gas offerings or operations. Burroughs and Holstine hired Griffin and later Williams to spearhead sales efforts, which relied heavily on cold-calling potential investors from "lead lists" that Petrobridge purchased.

19.     Petrobridge salespersons enticed investors by touting potential investment returns of 37% to 59% for the Starks JV and 13% (after 3 years) to 170% (after 6 to 10 years) for the SLJV. These returns were based on the purported future production and tax benefits of "turnkey" oil and gas wells. The investors expected their profits to come solely from the efforts of Petrobridge, which represented that it would develop the oil and gas well sites, sell the produced oil and gas, and distribute a portion of the revenue to investors.

20.     From approximately February 2016 to May 2016, Petrobridge raised approximately $1.5 million from at least 33 investors in at least 15 states in connection with the SLJV Offering.

From approximately May 2016 to March 2017, Petrobridge raised approximately $1.7 million from about 29 investors in at least 15 states in connection with the Starks JV Offering.

**B.     Investors Relied on Burroughs and Holstine for the Success of the Petrobridge Offerings**

21.     Burroughs and Holstine prepared, or directed the preparation of, the SLJV and Starks JV offering materials.  Those materials included: (1) Confidential Information Memoranda or private placement memoranda ("PPM") that purported to describe how the ventures would operate; (2) confidential investment presentations, which summarized the offering for prospective investors; (3) Joint Venture Agreements ("JVA") that designated Petrobridge as the managing joint venturer; (4) an Application Agreement; and (5) an investor questionnaire.  These offering materials were provided to prospective investors in the course of the sales process.  The operative terms of the SLJV and Starks JV PPMs and JVAs were largely the same, and the differences related to certain terms unique to the respective offerings such as the project well sites, and the amount of funds sought to be raised.

22.     The SLJV and Starks JV PPMs and JVAs ostensibly placed managerial authority with the investors, but, in reality, investors were passive and relied on Petrobridge—more specifically, Burroughs and Holstine—for the success and profitability of the joint ventures.  The PPMs and JVAs appointed Petrobridge as the managing venturer and delegated to Petrobridge control of the day-to-day affairs and operations of the joint venture.

23.     Burroughs and Holstine had complete control over Petrobridge and every aspect of the SLJV and Starks JV.  Petrobridge, as the managing venturer, had the power to bind the joint ventures; whereas the investors could not bind the joint ventures or act on their behalf.  Burroughs and Holstine identified the prospects, prepared the organizational documents and agreements, set the offering prices, controlled who was admitted to the ventures, and had the power to extend or

terminate the capitalization period. Furthermore, Burroughs and Holstine controlled access to information about the status of the operations. Though Petrobridge was required to provide operating reports and quarterly statements with estimated expenses, they rarely did so. According to some investors, Burroughs and Holstine never sought input from investors regarding joint-venture operations.

24. Further, Defendants did not seek out investors with managerial experience in oil and gas exploration industry and instead marketed the investments to the general public using generic lead lists and other general solicitation efforts. The investors were scattered throughout the United States and lacked experience in, and knowledge about, oil and gas exploration. Most investors had no prior relationships with or contact information for each other. By way of example, one investor was a retired math teacher from Ohio and another was a World War II veteran and retired business owner in Florida—neither of which knew one another, had any contact information for the other, or had any experience in the oil and gas exploration industry.

25. The JVAs provided that the investors could vote on certain limited matters, such as the removal of the managing venturer. However, several barriers inhibited the investors' ability to exercise that power. Investors had no access to information other than through Petrobridge. Also, the investors could not call for a vote—such as a vote to remove the managing venturer—unless they first amassed more than 10% of the outstanding units. Given that the investors were numerous, geographically dispersed, and most had no prior relationship to or contact information for one another, their ability to organize and exercise their voting power was effectively impotent. Thus, from the outset, investors were dependent on Petrobridge—more specifically, Burroughs and Holstine—for the success of their investment.

C. **Burroughs Concealed His and Griffin's Roles in Petrobridge**

26. After forming Petrobridge in July 2015, Burroughs learned that a potential investor

had posted on a consumer reporting website called RipoffReport.com to warn others about any project involving Burroughs. Though not disclosed in the offering materials for the Petrobridge Offerings, at least seven state securities regulators had issued cease-and-desist orders against Burroughs for offering oil-and-gas investments in violation of those states' securities regulations. Several of these regulatory proceedings found that Burroughs failed to disclose material information to investors. Many of these regulatory proceedings also included findings that Burroughs—as the Commission alleges in this matter—engaged in the unregistered offer and sale of securities.

27. Recognizing that individuals might not invest given his checkered past, Burroughs sought to conceal his ownership interest in, and involvement with, Petrobridge. He accomplished this by having Holstine sign documents to exclude or remove Burroughs from the relevant filings with the Texas Secretary of State, and then used other entities to disguise his involvement with Petrobridge. Burroughs held, through his entity Fortress Water Solutions, LLC ("Fortress"), a 50% ownership interest in Petrobridge's parent entity, Marcelina, and served as a managing member of that entity. Marcelina's August 27, 2015 Texas Certificate of Formation identified only Holstine as a manager. Also, in November 2015, Burroughs had Holstine sign a Certificate of Amendment ("Amended COA") for Petrobridge that removed previous references to Burroughs as a manager from the relevant Petrobridge Texas Secretary of State filings. Holstine falsely noted on the Amended COA that the purpose of the amendment was to "delete one of the Managers shown. Was included in error."

28. Burroughs, who drafted the SLJV and Starks JV PPMs, also left himself out of the management sections of the PPMs:

(a) The SLJV PPM stated that "Marcelina Creek, LLC owns 100% of . . .

      Petrobridge Energy LLC. Mr. Holstine is an owner and a Manager of Marcelina Creek, LLC."

  (b)  The Starks JV PPM stated that "Mr. Holstine is also a 50% owner of Marcelina Creek LLC which supplies drilling and production projects to third parties including the Venture."

Both PPMs disclose Holstine as an owner of Marcelina, but they both fail to disclose that Burroughs is a co-owner and manager. By failing to disclose Burroughs's involvement, the PPMs concealed Burroughs's involvement with Petrobridge and, thereby, his unfavorable regulatory record—facts that a reasonable investor would want to know when making a decision whether to invest in the Petrobridge Offerings. In addition, the PPMs failed to disclose Griffin's involvement in Petrobridge and, thereby, his adverse regulatory history.

  29.  Holstine learned about Burroughs's checkered past and regulatory troubles. Yet he also understood that that the offering materials omitted Burroughs's name and his role at Petrobridge. Nonetheless, Holstine went along with Burroughs's deception and allowed Petrobridge and its salespeople to solicit investors without disclosing Burroughs's extensive disciplinary history and his role at Petrobridge.

  30.  In contrast to representations contained in Petrobridge's public filings and the SLJV and Starks JV PPMs, Burroughs actually directed Petrobridge's day-to-day operations and managed the offer and sale of the Petrobridge Offerings. For example, he: (1) was a signatory on Petrobridge's bank account; (2) participated in the interviewing, hiring, and training of sales staff; (3) provided sales scripts to sales representatives; and (4) conducted daily sales staff meetings. He also helped solicit investors. In his communications with investors, Burroughs concealed his identity by using a generic Petrobridge email address—

businessdevelopment@petrobridgeenergy.com.  This is notably in contrast with other Petrobridge employees who used e-mail accounts that plainly reflected their identities.

**D.    Burroughs's and Holstine's Additional Starks JV Misrepresentations and Omissions**

31.    The offering materials for the Starks JV, which were drafted by Burroughs with the assistance of Holstine, made several additional material misrepresentations and/or omitted material facts.  In particular, the Starks JV offering materials:

(a)    Promised investors that they would acquire an interest in the leases without also disclosing that their interests could be lost if the operator failed to perform certain actions.  Unfortunately for Starks JV investors, this omitted fact happened.  The operator failed to plug the required number of wells and the lease owner terminated the lease, leaving the Starks JV investors without any ownership interest in the Starks JV wells;

(b)    Falsely claimed that the Starks JV had possession of 1,460 leasehold acres when the leases at issue actually only included 1,207 acres.  Further, Burroughs and Holstine sold $550,000 in Stark JV interests to ten investor-victims before the operator even acquired *any* of the relevant acreage—a critical fact they failed to disclose; and

(c)    Enticed investors with expected investment returns between 37% and 59% without taking into account lease operating expenses, which should have reduced the projected returns by at least 12%.

Burroughs knew, or was at least severely reckless in not knowing, these statements were false. Holstine was at least negligent in not knowing these statements were false.

**E.    Unregistered Brokers and Compensation**

32.    Burroughs and Holstine hired several salespeople to offer and sell interests in the

Petrobridge Offerings. Griffin, who was a salesperson for the Petrobridge Offerings from approximately February 2016 through March 2017, and Williams, who joined in August 2016, were the most successful salespeople. Neither was associated with a registered broker-dealer during the time they offered and sold the Petrobridge Offerings. Both actively solicited investors through cold calling. After being trained and coached by Burroughs, Griffin and Williams reviewed offering materials with investors that contained information related to expected returns on the investments and answered investor questions. Griffin and Williams received transaction-based compensation in the form of sales commissions based on the amount they raised from investors. From February 2016 to March 2017, Griffin received over $202,715 in commissions in connection with the SLJV and the Starks JV. From September 2016 to June 2017, Williams received $320,183 in commissions.

F.   **Holstine and Burroughs Profited From Their Fraud**

33.   From March 2016 to March 2017, Burroughs, personally and through Fortress received investor funds totaling $488,975. From March 2016 to June 2017, Holstine received ill-gotten gains in the amount of $283,087.

**FIRST CLAIM FOR RELIEF**

**Violations of the Antifraud Provisions of the Exchange Act
Section 10(b) [15 U.S.C. § 78j(b)] and Rule 10b-5 [17 C.F.R. § 240.10b-5] thereunder.**

*Against Burroughs*

34.   As more fully set forth in paragraphs 1-5, 12, 13, 17-31, and 33 above, between February 2016 and March 2017, Burroughs raised approximately $3.2 million by selling the Petrobridge Offerings through false and misleading representations or material omissions. Burroughs lured investors in with promises of oversized investment returns, while withholding critical material information from actual and prospective investors. Burroughs also schemed to

conceal his ownership interest in Petrobridge and his involvement in the Petrobridge Offerings and to receive investor funds that were subsequently disbursed to him.

35. By engaging in the acts and conduct alleged herein, Burroughs, directly or indirectly, singly or in concert with others, in connection with the purchase or sale of any security, by the use of the means or instrumentality of interstate commerce, or of the mails, (i) employed a device, scheme, or artifice to defraud; and/or (ii) made an untrue statement of a material fact or omitted to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and/or (iii) engaged in an act, practice, or course of business which operated or would operate as a fraud or deceit upon any person.

36. Burroughs engaged in the above-referenced conduct knowingly or with severe recklessness.

37. By reason of the foregoing, Burroughs has violated and, unless enjoined will continue to violate, Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 [17 C.F.R. § 240.10b-5] thereunder.

## SECOND CLAIM FOR RELIEF

### Violations of the Antifraud Provisions of the Securities Act
### Section 17(a) [15 U.S.C. §§ 77q(a)]

*Against Burroughs and Holstine*

38. As more fully set forth in paragraphs 1-5, 12-14, 17-31, and 33 above, between February 2016 and March 2017, Burroughs and Holstine raised approximately $3.2 million by selling the Petrobridge Offerings through false and misleading representations or material omissions. Burroughs and Holstine lured investors in with promises of oversized investment returns, while withholding critical material information from actual and prospective investors. Burroughs, with Holstine's assistance, also schemed to conceal his ownership interest in

Petrobridge and his involvement in the Petrobridge Offerings and to receive investor funds that were subsequently disbursed to him and Holstine.

39. By engaging in the acts and conduct alleged herein, Burroughs, directly or indirectly, singly or in concert with others, in the offer or sale of a security, by the use of any means or instruments of transportation or communication in interstate commerce or by use of the mails, has:

    a. knowingly or with severe recklessness employed a device, scheme, or artifice to defraud; and/or

    b. knowingly, recklessly, or negligently obtained money or property by means of an untrue statement of a material fact or an omission to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and/or

    c. knowingly, recklessly, or negligently engaged in a transaction, practice, or course of business which operated or would operate as a fraud or deceit upon the purchaser.

40. By engaging in the acts and conduct alleged herein, Holstine, directly or indirectly, singly or in concert with others, in the offer or sale of a security, by the use of any means or instruments of transportation or communication in interstate commerce or by use of the mails, has:

    a. at least negligently obtained money or property by means of an untrue statement of a material fact or an omission to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and

    b. at least negligently engaged in a transaction, practice, or course of business which operated or would operate as a fraud or deceit upon the purchaser.

41. By reason of the foregoing, Burroughs and Holstine have violated, and unless enjoined will continue to violate, Sections 17(a)(2) and (3) of the Securities Act [15 U.S.C. §§ 77q(a)(2) and (3)], and Burroughs has violated, and unless enjoined will continue to violate, Sections 17(a)(1) of the Securities Act [15 U.S.C. § 77q(a)(1)].

### THIRD CLAIM FOR RELIEF

**Violations of Sections 5(a) and (c) of the Securities Act [15 U.S.C. §§ 77e(a) & (c)]**

*Against All Defendants*

42. As more fully set forth in paragraphs 1, 12-17, 19, 22-25, and 32 above, between February 2016 and March 2017, the Defendants collectively raised approximately $3.2 million by selling the Petrobridge Offerings to persons throughout the United States. However, neither of the Petrobridge Offerings were registered with the Commission, nor exempt from registration.

43. By engaging in the conduct described herein, Burroughs, Holstine, Griffin, and Williams, directly or indirectly, singly or in concert with others:

    a. made use of the means or instruments of transportation or communication in interstate commerce or of the mails to sell, through the use or medium of any prospectus or otherwise, securities as to which no registration statement was in effect; and/or

    b. for the purpose of sale or delivery after sale, carried or caused to be carried through the mails or interstate commerce, by means or instruments of transportation, securities as to which no registration statement was in effect; and/or

      c.    made use of means or instruments of transportation or communication in interstate commerce or of the mails to offer to sell, through the use or medium of any prospectus or otherwise, securities as to which no registration statement had been filed.

44. By engaging in the conduct described above, Burroughs, Holstine, Griffin, and Williams have violated, and unless enjoined will continue to violate, Sections 5(a) and 5(c) of the Securities Act [15 U.S.C. §§ 77e(a) and (c)].

### FOURTH CLAIM FOR RELIEF

### Offers and Sales of Securities by an Unregistered Broker
### Violations of Exchange Act Section 15(a) [15 U.S.C § 78o(a)]

*Against Griffin and Williams*

45. As more fully set forth in paragraphs 1, 6, 12, 15-17, 19, 22-25, and 32 above, between February 2016 and March 2017, Griffin and Williams offered and sold the Petrobridge Offerings, primarily through a nationwide cold calling campaigns.

46. By engaging in the conduct described above, Griffin and Williams each acted as brokers within the meaning of Section 3(a)(4) of the Exchange Act [15 U.S.C. § 78c(4)], and made use of the mails or the means or instrumentality of interstate commerce to effect transactions in, or to induce or attempt to induce the purchase or sale of, a security without being registered in accordance with Section 15(b) of the Exchange Act.

47. By engaging in the conduct described above, Griffin and Williams violated, and unless enjoined will violate in the future, Section 15(a) of the Exchange Act [15 U.S.C. § 78o(a)].

### PRAYER FOR RELIEF

WHEREFORE, the Commission respectfully requests that the Court enter a judgment:

1. Permanently enjoining Burroughs from future violations of Sections 5(a), 5(c), and 17(a) of the Securities Act [15 U.S.C. §§ 77e(a), 77e(c), and 77q(a)], and Sections 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

2. Permanently enjoining Holstine from future violations of Sections 5(a), 5(c), 17(a)(2), and 17(a)(3) of the Securities Act [15 U.S.C. §§ 77e(a), 77e(c), 77q(a)(2), and 77q(a)(3)].

3. Permanently enjoining Griffin and Williams from future violations of Sections 5(a) and 5(c) of the Securities Act [15 U.S.C. §§ 77e(a) and 77e(c)] and Section 15(a) of the Exchange Act [15 U.S.C. § 78o(a)].

4. Permanently enjoining Burroughs from directly or indirectly, including, but not limited to, through any entity owned or controlled by him, participating in the issuance, purchase, offer, or sale of any security; provided, however, that such injunction shall not prevent Burroughs from purchasing or selling securities listed on a national securities exchange for his own personal account.

5. Ordering that Burroughs be barred, pursuant to Section 20(e) of the Securities Act [15 U.S.C. § 77t(e)] and Section 21(d)(2) of the Exchange Act [15 U.S.C. § 78u(d)(2)], from serving as an officer or director of any issuer that has a class of securities registered pursuant to Section 12 of the Exchange Act [15 U.S.C. § 78l], or that is required to file reports pursuant to Section 15(d) of the Exchange Act [15 U.S.C. § 78o(d)];

6. Ordering Defendants to disgorge all ill-gotten gains they received as a result of the conduct alleged herein, together with pre-judgment interest.

7. Imposing civil penalties against Burroughs pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)] for violations of the federal securities laws as alleged herein.

8.  Imposing civil penalties against Holstine pursuant to Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)] for violations of the federal securities laws as alleged herein.

9.  Imposing civil penalties against Griffin and Williams pursuant to Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)] for violations of the federal securities laws as alleged herein.

10. Imposing such other and further relief as the Commission may show itself entitled.

Dated:  December 27, 2021

Respectfully submitted,

*/s/ Jason P.Reinsch*
Jason P. Reinsch
Texas Bar No. 24040120
United States Securities and Exchange Commission
Fort Worth Regional Office
801 Cherry Street, Suite 1900
Fort Worth, Texas 76102
(817) 900-2601 (phone)
(817) 978-4927 (facsimile)
ReinschJ@SEC.gov

ATTORNEY FOR PLAINTIFF
SECURITIES AND EXCHANGE COMMISSION